UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATINA HOWARD,
on behalf of M.D.C.,

    Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

    Defendant.
_____/

Civil Action No. 17-10193
Honorable Matthew F. Leitman
Magistrate Judge Elizabeth A. Stafford

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 23, 25]**

Plaintiff Katina Howard, on behalf of her minor son M.D.C, appeals a final decision of Defendant Commissioner of Social Security (Commissioner) denying M.D.C.'s application for supplemental security income benefits (SSI) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 25] be **GRANTED**;
- Howard's motion [ECF No. 23] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED**, pursuant to sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. M.D.C.'s Background and Disability Application

Born in March 2001, M.D.C. was 12 years old when Howard filed an application for disability benefits on December 6, 2013. [ECF No. 12-5, Tr. 143]. Howard alleged that M.D.C. is disabled by learning disability, attention deficit hyperactivity disorder (ADHD), asthma, and heart issues, with an onset date of September 1, 2008. [ECF No. 12-6, Tr. 155]. After a hearing on October 23, 2015, during which M.D.C. and Howard testified, the ALJ found that he was not disabled. [ECF No. 7-2, Tr. 26, 31-52]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Howard timely filed for judicial review. [*Id.*, Tr. 1-3; ECF No. 1].

### B. The ALJ's Application of the Disability Framework

A child under the age of 18 will be considered disabled if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

1382c(a)(3)(C)(i). The Commissioner determines whether a child is disabled by analyzing three sequential steps, assessing: (1) whether the child is engaged in "substantial gainful activity"; (2) whether the child has any "severe" impairments;[1] and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings"). See 20 C.F.R. § 416.924(a); *Barnett ex rel. D.B. v. Comm'r of Soc. Sec.*, 573 F. App'x 461, 462 (6th Cir. 2014).

In analyzing functional equivalence, the ALJ examines the effects of a claimant's impairments on six behavioral domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. *Barnett*, 573 F. App'x at 464; 20 C.F.R. § 416.926a(b)(1). A claimant's impairments "functionally equal the listings" if they result in "'marked' limitations in two domains" or "an 'extreme' limitation in one domain." § 416.926a(a).

Applying this framework, the ALJ concluded that M.D.C. was not disabled. At the first step, he found that M.D.C. had not engaged in

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 920(c).

3

substantial gainful activity since the application date. [ECF No. 12-2, Tr. 16]. Next, the ALJ determined that M.D.C. had the severe impairments of asthma, conduct disorder/ADHD, learning disorder reading, minimal lumbar degenerative disc disease, and congenital anomalies of the heart. [*Id.*]. At the third step, he concluded that M.D.C.'s impairment did not meet, medically equal, or functionally equal the severity of the listed impairments. [*Id.*, Tr. 16-17].

In assessing the six functional equivalence domains, the ALJ found that M.D.C. had "less than marked" limitations in five domains (acquiring and using information, attending and completing tasks, interacting and relating with others, caring for yourself, and health and physical well-being) and "no limitation" in the remaining domain (moving about and manipulating objects). [*Id.*, Tr. 21-26]. As a result, M.D.C. was found not disabled. [*Id.,* Tr. 26].

**II.    ANALYSIS**

**A.**

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is

"more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted).

Howard argues that the ALJ made an adverse credibility determination without consideration of all relevant evidence, and that the matter should be remanded for reconsideration of a listing reclassification which became effective January 17, 2017. The Court finds that Howard's arguments are without merit and recommends that the decision be affirmed.

**B.**

The ALJ found that M.D.C.'s statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. [ECF No. 15-2, Tr. 16]. Credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241.

Regarding mental impairments,[2] the ALJ reviewed the evidence in the record and found support for a "learning disability and a conduct disorder that may include aspects of ADHD." [ECF No. 12-2, Tr. 19]. The evidence included a November 2010 examination of M.D.C. by Michael Matouk, M.A., L.L.P., who found him to have a full scale IQ of 88, which is at the 21st percentile, with the lowest scores in verbal ability, word usage, letter-number sequencing (which he noted is sensitive to attention), and overall fund of knowledge. [ECF No. 12-7, Tr. 221]. Matouk found M.D.C. to display variable attentional deployment and intact reality functioning, and that while his overall functioning was in the low average range, his verbal abilities were less developed than his overall performance, and his hands-on abilities were higher. [*Id.*, Tr. 225]. His profile was "generally most consistent with a reading disability," and he had a fair to good prognosis, depending on educational and psychological intervention. [*Id.*].

In January 2011, M.D.C. was examined by Kathleen A. Eurich, M.A., CCC-SLP, a speech and language pathologist, who found a mild to moderate impairment in expressive language and a possible mild impairment in receptive language. [*Id.*, Tr. 227-29]. The next examination

---

[2] Howard does not challenge the ALJ's findings regarding M.D.C.'s physical impairments.

of record was in April 2014, when psychologist Nicholas J. Bodoin, Ph.D., found little support for an ADHD diagnosis, but instead diagnosed a "significant behavioral pathology as [M.D.C.'s] behavior is essentially out of control." [*Id.*, Tr. 297]. M.D.C. was not cooperative during this examination. [*Id.*, Tr. 295-97].

In May 2014, M.D.C.'s school psychologist assessed him as having a below average IQ of 84, and as operating under his current grade level in almost every category. [*Id.*, Tr. 359-65]. However, he was fully cooperative with testing, could follow instructions and complete nonverbal activities, and had an average ability to sustain attention, concentrate, and exert mental control. [*Id.*, Tr. 361, 364]. A year later, the school determined that he would have 30.9 hours of general education instruction per week, with only 1.15 hours of special education instruction. [*Id.*, Tr. 334]. In October 2015, teacher Angel Bell submitted a short statement that M.D.C. had great difficulty staying on task, exhibited disruptive behavior, rarely completed assignments, and was four grade levels below his current grade based on testing. [ECF No. 12-6, Tr. 217].

The ALJ referred to all of this evidence in making his credibility determination and subsequent assessments of the six functional equivalence domains. [ECF No. 12-2, Tr. 19-20]. He also cited the

opinions of state agency consultants Valorie Domino, M.D., a child and adolescent psychologist, and Jerry Evans, M.D., a pediatrician. [*Id.*, Tr. 20; ECF No. 12-3, Tr. 59-65]. Though they did not examine M.D.C., the ALJ afforded their opinions great weight, as they were able to review all of the psychological consultative examination findings. [*Id.*]. He found that the subsequent records further affirmed their analyses. [ECF No. 12-2, Tr. 20.].

Dr. Domino and Dr. Evans found M.D.C. to be less than markedly limited in the functional equivalence domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. [ECF No. 12-3, Tr. 60]. They found him to have no limitations in the domains of moving about and manipulation of objects, caring for yourself, and health and physical well-being, based on M.D.C.'s activities of playing basketball and other physical activities and playing video games. [*Id.*, Tr. 60-61, referring to ECF No. R. 12-6, Tr. 165, 175]. The ALJ noted that no other psychologist provided an opinion as to M.D.C.'s degrees of limitation in the functional equivalence domains. [ECF No. 12-2, Tr. 20].

Howard claims that the ALJ failed to consider the opinion of Dr. Bodoin or the findings within M.D.C.'s Individualized Education Program

8

(IEP)—a contention that is plainly false.[3]  [ECF No. 23, PageID 538-39]. The ALJ explicitly considered this evidence.  [ECF No. 12-2, Tr. 19-20]. And Howard fails to identify which of her or M.D.C.'s claims she is asserting the ALJ wrongly discredited.  [ECF No. 23, PageID 538-39].

Howard also fails to explain how Dr. Bodoin's opinion or the IEP would support a disability finding under the relevant regulations.  [*Id.*].  Dr. Bodoin did not opine about M.D.C.'s degrees of limitation in the functional equivalence domains.  [ECF No. 12-7, Tr. 294-98].  Extrapolating from his opinion, Dr. Bodoin was unable to make an accurate assessment of M.D.C.'s ability to acquire and use information, or to attend and complete tasks, due to M.D.C.'s lack of cooperation.  [*Id.*, Tr. 295-98].  Dr. Bodoin does not appear to have attempted to assess M.D.C.'s ability to move about and manipulate objects, his ability to care for himself, or his health and physical well-being.  [*Id.*, Tr. 294-98].  It is true that Dr. Bodoin described M.D.C. as interacting poorly with others, but that conclusion was derived from information provided by Howard rather than from Dr. Bodoin's firsthand observations.  [*Id.*, Tr. 294-95].  Simply put, Dr. Bodoin's opinion does not demonstrate that M.D.C. was markedly or extremely limited in any of the functional domains.

---

[3] The IEP is found at ECF No. 12-7, Tr. 320-67.

Howard's argument that "the entire IEP confirms that [M.D.C.'s] learning disability is the source of his misconduct," [ECF No. 23, PageID 539], does not address the specific functional domains that must be assessed, and is too perfunctory to warrant this Court's review. "It is well-established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argument, are deemed waived." *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) (internal quotation marks and citation omitted). *See also Bishop v. Gosiger, Inc.*, 692 F.Supp.2d 762, 774 (E.D. Mich. 2010) ("It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to put flesh on its bones.") (internal quotation marks and citations omitted). The Court declines Howard's invitation to review the entire 48 page IEP to determine whether it supports a finding of disability. [ECF No. 12-7, Tr. 320-67].

Howard also fails to explain how Dr. Bodoin's opinion or the IEP discredit the ALJ's findings. The ALJ found M.D.C. to have the severe impairment of conduct disorder/ADHD, mirroring Dr. Bodoin's diagnosis of conduct disorder, and the ALJ cited directly to the IEP in his findings for M.D.C.'s first functional equivalence domain. [ECF No. 12-2, Tr. 16, 22]. The ALJ further relied on the opinions of Dr. Domino and Dr. Evans, who

gave great weight to Dr. Bodoin's opinion. [ECF No. 12-3, Tr. 61-62]. Howard has not provided a reason to overturn the ALJ's credibility determination or his other findings.

**B.**

Howard also contends that changes in the Social Security regulations that became effective in January 2017 constitute cause for remand. [ECF No. 23, Tr. 539]. The ALJ found that M.D.C. did not meet Listings 112.08 (personality disorders) or 112.11 (ADHD). [ECF No. 12-2, Tr. 16]. Howard does not challenge these findings, [ECF No. 23, PageID 539], but she contends that the Social Security Administration reclassified Listing 112.11 as 112.08, effective January 17, 2017, and that remand is warranted to allow the ALJ to assess M.D.C.'s impulse control and intermittent explosive behavior in light of the revisions. [*Id.*].

Though the listings have been revised since the ALJ's decision below, and one revision was in fact effective January 17, 2017, that revision did not reclassify Listing 112.11 as 112.08. Among many changes made with that effective date, Listing 112.08 was revised to include impulse-control disorders. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 FR 66138-01, 2016 WL 5341732 (Sept. 26, 2016). But Howard has not provided authority allowing the new regulations to

apply retroactively to the ALJ's decision, and the Administration specifically intended otherwise. "[W]e will use these rules on and after their effective date, in any case in which we make a determination or decision. We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions." *Id.* at n.1. Thus, Howard's request for remand in light of the revised regulations should be rejected.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Howard's Motion for Summary Judgment [ECF No. 23] be **DENIED**, the Commissioner's Motion [ECF No. 25] be **GRANTED**, and the ALJ's decision **AFFIRMED**.

                                         s/Elizabeth A. Stafford
                                         ELIZABETH A. STAFFORD
                                         United States Magistrate Judge

Dated: February 9, 2018

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any

further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

13

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 9, 2018.

                                          <u>s/Marlena Williams</u>
                                          MARLENA WILLIAMS
                                          Case Manager